IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

SAUL D. REIS, JR.
  Plaintiff,

vs.            Case No.: 5:12cv336/MMP/EMT

PAIGE AUGUSTINE, et al.,
  Defendants.
_____/

**REPORT AND RECOMMENDATION**

  This is an action filed pursuant to Title 28 U.S.C. § 1331 and <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). It is now before the court on Plaintiff's third amended complaint (doc. 47). Leave to proceed in forma pauperis has been granted (doc. 10).

  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N. D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b). After consideration of the issues raised by Plaintiff, it is the opinion of the undersigned that this action should be dismissed prior to service.

I.  BACKGROUND

  Plaintiff, an inmate who proceeds pro se, was incarcerated at the Federal Correctional Institution in Marianna, Florida ("FCIM"), at the time the events giving rise to his complaint occurred. He is now incarcerated at the United States Penitentiary in Marion, Illinois. Named as Defendants in the third amended complaint are Warden Paige Augustine; Associate Warden Neil

Robinson; Captain Theresa Lewis; Registered Nurse Gretchen Ryle; Registered Nurse Simona Cooke; Investigator R. Solis; and FCIM psychiatrist Dr. Ramos (*see* doc. 47 at 1–3).[1]

In the third amended complaint Plaintiff makes the following allegations. At a visit to the FCIM medical department on January 8, 2012, Plaintiff was told to pick up some prescribed medications on January 10, 2012 (doc. 47 at 6). Plaintiff attempted to get his medications on January 10, 2012, at the pharmacy window where Defendant Ryle was working; after discovering that the prescriptions were not yet ready, Defendant Ryle told Plaintiff to "'get the f[ ] out of my window, you sick pervert! Ar[e]n't you ashamed of killing that girl?'"[2] (*id.*). Plaintiff states that he left the window without responding to Defendant Ryle but the following day, January 11, 2012, he filed a grievance against her for unprofessionalism (*id.*).

On January 12, 2012, Plaintiff was moved to the special housing unit ("SHU"), "pending [an] administrative investigation" (doc. 47 at 6). During the time Plaintiff was housed in the SHU, Defendants Ryle and Cooke harassed Plaintiff by leaving his cell light on, yelling, throwing medications on the floor, and calling him names (*id.* at 7, 8). On January 17, 2012, as Defendants Augustine and Robinson were touring the SHU, Plaintiff verbally informed them of Ryle's and Cooke's misconduct; the following week Plaintiff also submitted his complaints about Ryle and Cooke in writing, apparently to Defendant Robinson (*id.* at 7).

On January 16, 2012, Defendant Lewis directed that another inmate, Juarez, be placed in the cell with Plaintiff as a confidential informant; Juarez was on psychotropic medications and had recently seriously injured another prisoner by assaulting him (doc. 47 at 7). Juarez propositioned Plaintiff for "sexual favors," but Plaintiff "declined" (*id.*). Plaintiff reported Juarez' "constant mast[ur]bation and exposure," and he also reported to Defendant Solis that Defendants Ryle and Cooke allowed Juarez to save rather than swallow his psychotropic medication. In time, Juarez

---

[1] The page numbers correspond to those assigned by the court's electronic docketing system.

[2] Defendant Ryle's comments refer to Plaintiff's offense(s) of conviction. Plaintiff pled guilty in federal court to two counts of interstate travel to engage in unlawful sexual activity (with a minor) in violation of 18 U.S.C. § 2423(b), and to statutory rape and manslaughter (one of Defendant's interstate encounters with a minor resulted in her death) in state court. *See* United States v. Reis, 369 F.3d 143, 146 (2d Cir. 2004).

became "physically abusive" and "threaten[ed] to sexually assault" Plaintiff, which forced Plaintiff to "fight him off" (*id.*).

On February 29, 2012, Defendant Solis investigated Plaintiff's allegations against Defendant Ryle; Defendant Cooke "made up allegations of [P]laintiff having been stalking and harassing [D]efendant Ryle to justify [Defendant Ryle's] misconduct" and "to get [Plaintiff] transferred" (doc. 47 at 8, 9). In late-February/early-March 2012 Plaintiff declared a hunger strike in an effort to be moved from the cell which he shared with Juarez, in order protect himself from being raped and to obtain treatment for his "esoph[a]geal reflux" condition (*id.*). Plaintiff received medical attention when he declared the hunger strike, but Defendant Lewis refused to permit him to be moved to another cell (*id.*). Between January 17, 2012, and April 2012, Plaintiff encountered Defendants Augustine, Robinson, Solis, Ryle, Cooke, and Lewis on a daily or weekly basis, at which times he notified them of the "continuing abuse" by Defendants Ryle and Cooke (*id.*). Also, Plaintiff made written requests to Defendants Ramos, Robinson, and Solis to be moved, which apparently also were unsuccessful (*id.*).

While housed in the SHU Plaintiff was never issued an incident report for any infractions, given a hearing, or "given any disciplinary sanctions" (doc. 47 at 8–9). Although Defendant Solis informed Plaintiff in April 2012 that he would be released to general population, Defendant Lewis did not sign a release to permit Plaintiff to return to general population, as she had "hopes for inmate Juarez to find information to relate to her as he had been her confidential informant" (*id.* at 9). Additionally, Plaintiff had a "medium" points level and anticipated transfer to a low security prison; instead, he was designated a "high" custody level and recommended by Defendants Augustine, Robinson, Lewis, and Solis for transfer to USP Terre Haute "as a method of retaliation . . . in hopes to have him hurt or possibly killed" (*id.*). Unlike Plaintiff, Juarez was given a hearing and, with the help of Defendant Lewis, had an incident report expunged. Also, despite having a "high" custody level, Juarez was recommended for transfer to a correctional institution rather than a penitentiary (*id.*). The day prior to Plaintiff's transfer from FCIM to the penitentiary in Terre Haute, Defendant Ryle harassed Plaintiff by stating, "'you will love the place they are sending you'" (*id.* at 9–10).

Plaintiff asserts that for the four months he spent in the SHU prior to his retaliatory transfer to USP Terre Haute, he experienced other "retali[a]tory methods," such as mail tampering,

destruction of sick call requests, destruction of personal property, repeated shakedowns of his cell, and denial of permission to communicate with his embassy (doc. 47 at 10). According to Plaintiff, he notified Defendants Augustine, Robinson, Lewis, Ramos, and Solis "regularly, verbal[l]y and [in writing] about the retali[a]tory acts to no avail" (*id.* at 10). Also, according to Plaintiff, as result of the "negligent" medical treatment he received at FCIM for his gastroesophageal reflux disease, he "suffered complications resulting in an invasive operation done while at USP Terre Haute in January 2013" (*id.*). Plaintiff also complains that he was forced to shower with cold water for three months and that he suffered from "anxiety, panic attacks, and chronic esophag[e]al disease [ ] while his requests for sick call and psychology were either destroyed, ignored, or neglected" (*id.*). Asserting he was subjected to cruel and unusual punishment and denied due process, Plaintiff seeks compensatory and punitive damages as relief (*id.*).

II.   ANALYSIS

Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). To survive § 1915(e)(2)(B)(ii), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." Iqbal, 556 U.S. at 679 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted). And "bare assertions" that "amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679. Finally, in civil rights cases, "[m]ore than mere conclusory notice pleading is required . . . . A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation marks and alteration omitted).

The court addresses Plaintiff's numerous allegations generally in the order in which he presents them in the third amended complaint. First, Plaintiff's allegations of harassment and/or verbal abuse by Defendants Ryles and Cooke fail to state a claim for relief, as such conduct does not rise to the level of a constitutional violation. Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (noting that verbal taunts, alone, are insufficient to state a constitutional violation); Hernandez v. Florida Dep't of Corrections, 281 F. App'x 862, 866 (11th Cir. 2008) (holding that plaintiff's allegations of verbal abuse and threats by prison officials did not state a constitutional claim because the defendants never carried out the threats, and "verbal abuse alone is insufficient to state a constitutional claim").[3]

Second, the alleged failure by Defendants Augustine, Robinson, Solis, Ryle, Cooke, Lewis, and Ramos to respond appropriately to Plaintiff's written or verbal requests for action does not state

---

[3] The Eleventh Circuit has held that cases decided under 42 U.S.C. § 1983 generally apply to Bivens actions as well "[b]ecause of the similarity in the causes of action . . . ." Wilson v. Blankenship, 163 F.3d 1284, 1288 (11th Cir. 1998) (citing Abella v. Rubino, 63 F.3d 1063, 1065 (11th Cir. 1995)).

Case No.: 5:12cv336/MMP/EMT

a claim for relief. Prison officials who were not involved in the alleged constitutional violation, and whose only roles involved the denial of administrative grievances or the failure to act, are not liable on the theory that failure to act constituted acquiescence in the unconstitutional conduct, even if the grievance was denied. Grinter v. Knight, 532 F.3d 567 (6th Cir. 2008); Shehee v. Luttrell,199 F.3d 295, 300 (6th Cir. 1999), *cert. denied* 530 U.S. 1264, 120 S. Ct. 2724, 147 L. Ed. 2d 988 (2000); *see also* Lomholt v. Holder, 287 F.3d 683, 683 (8th Cir. 2002) (defendants' denial of plaintiff's grievances did not state a substantive constitutional claim); Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989) (holding that prisoner failed to state a § 1983 claim against supervisory officials, where prisoner merely alleged the officials denied his grievance and did not allege they were personally involved in the alleged misconduct), *aff'd*, 915 F.2d 1574 (6th Cir. 1990). This is because liability under § 1983—or Bivens—must be based on active unconstitutional behavior and cannot be based upon "a mere failure to act." Salehpour v. University of Tennessee, 159 F.3d 199, 206 (6th Cir. 1998). Plaintiff must allege, but has not alleged, that Defendants did more than play a passive role in the alleged violation or showed mere tacit approval of the events. *Id.* (citing Leach v. Shelby County Sheriff, 891 F.2d 1241, 1246 (6th Cir. 1989)). His allegations do not reflect that Defendants "otherwise encouraged or condoned" the allegedly unconstitutional actions. *Id.* at 207. Filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even—as noted *supra*—if the grievance is denied. Wayne v. Jarvis, 197 F.3d 1098,1106 (11th Cir. 1999), *cert. denied,* 120 S. Ct. 1974, 146 L. Ed. 2d 804 (2000); Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984).

Third, Plaintiff has failed to state a claim against any Defendant for the failure to protect him from Inmate Juarez. While prison officials have a duty to protect prisoners from violence at the hands of other prisoners, Farmer v. Brennan, 511 U.S. 825, 833 (1994) (citations omitted), Plaintiff does not allege that he was actually assaulted, sexually or otherwise, by Juarez. Plaintiff alleges that Juarez propositioned him for sex and threatened to assault him when Plaintiff "declined," but Plaintiff's vague allegations are insufficient to ascertan what, if any, sexually threatening actions Juarez actually may have taken. Likewise, although Plaintiff describes Juareze as being violent and that he had to "fight him off" to prevent a sexual assault, Plaintiff does not identify even one single

specific incident in which he was actually attacked, nor does Plaintiff describe any specific acts of verbal or physical aggression Juarez committed.  Notably, Plaintiff does not allege that he suffered any type or degree of injury whatsoever at Juarez' hands.  Plaintiff's allegations are insufficient to show that Juarez initiated an attack on him, sexually or otherwise, or that Juarez presented a real threat of harm from which Defendants were obliged, but failed, to protect Plaintiff.  In short, Plaintiff has failed to allege facts that support a viable claim for the failure to protect.

Fourth, Plaintiff's allegation that he was forced to endure cold showers for three months does not state a claim under the Eighth Amendment.  The Eighth Amendment requires that, at the minimum, all claims challenging conditions of confinement must demonstrate an infliction of pain "without any penological purpose" or an "unquestioned and serious deprivation of basic human needs" such as medical care, exercise, food, warmth, clothing, shelter, or safety.  Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981); *see also* Hamm v. DeKalb Cnty., 774 F.2d 1567, 1571–72 (11th Cir. 1985).  Plaintiff's allegation that he was only provided cold water showers does not implicate the deprivation of a basic human need.  Furthermore, Plaintiff's allegation that he was subjected to "negligent" medical treatment for his gastroesophageal reflux condition does not state a claim under the Eighth Amendment.  Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'"  Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)).  Incidents of mere negligence or malpractice, such as Plaintiff's allegations implicate, do not rise to the level of constitutional violations.  *Id.* (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

Fifth, Plaintiff has failed to present facts that support a due process violation.  The Due Process Clause protects against deprivations of "life, liberty, or property, without due process of law . . . ."  U.S. Const. Amend. V.  As Plaintiff in this case was clearly not deprived of life or property, he is entitled to due process protections only if he was deprived of "liberty" within the meaning of the Fifth Amendment.  As an initial matter, Plaintiff acknowledges that he was not charged with or convicted of any disciplinary infractions in connection with his placement in the SHU and that no disciplinary sanctions were imposed against him.  *See* Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct.

2963, 41 L. Ed. 2d 935 (1974) (outlining due process requirements for prison disciplinary proceedings). To the extent Plaintiff contends that he was deprived of a liberty interest—and thus suffered a violation of his right to due process—by being assigned to and maintained in the SHU and subsequently being transferred to another, more restrictive institution, he is mistaken. There are two circumstances in which a prisoner can be deprived of a liberty interest beyond that already associated with his confinement. *See* Sandin v. Connor, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). The first is "when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court." Kirby v. Siegelman, 195 F.3d 1285,1290–91 (11th Cir. 1999) (citing Sandin, 515 U.S. at 484). The second is "when the [government] has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* at 1291 (quoting Sandin, 515 U.S. at 484). Here, neither circumstance described in Sandin applies. Plaintiff does not suggest that his stay in the SHU resulted in a sentence exceeding that imposed by the court of conviction. Moreover, his allegations do not suggest that he suffered the deprivation of any benefit which imposed hardship on him that was atypical or more significant than that experienced by other prisoners similarly situated. While the Eleventh Circuit has "assumed" that twelve months of solitary confinement may trigger procedural due process protections under Sandin, *see* Williams v. Fountain, 77 F.3d 372, 374–75 (11th Cir. 1996), Plaintiff's allegations in this case reflect that his stay in the SHU lasted, at most, for approximately four months. Furthermore, courts have held that changes in custody, classification levels, or even certain privileges are not atypical. *See* Moody v. Daggett, 429 U.S. 78, 88 n.9, 97 S. Ct. 274, 279 n.9, 50 L. Ed. 2d 236 (1976) (noting generally that prison transfers and changes in classification status do not require due process protections); Griffin v. Vaughn, 112 F.3d 703, 708 (3rd Cir. 1997) (holding that prisoner's exposure to the conditions of administrative custody for periods as long as fifteen months "falls within the expected parameters of the sentence imposed on him by a court of law" and did not deprive him of a liberty interest); Marchesani v. McCune, 531 F.2d 459 (10th Cir. 1976) (holding that inmates do not have protected liberty interests in particular custodial classification); Thomas v. Rosemeyer, 199 F. App'x 195 (3rd Cir. 2006) (finding plaintiff's confinement in the SHU for a period of 270 days was not an atypical

or significant hardship); *see also, e.g.*, Solliday v. Spense, No. 4:07cv363/RH/WCS, 2009 WL 2634207, at *11 (N.D. Fla. Aug. 21, 2009) (holding plaintiff's placement in administrative detention in the SHU and her transfer to other institutions did not implicate a liberty interest subject to due process protections); Powell v. Ellis, No. 3:07cv160/MCR/EMT, 2007 WL 2669432, at *4 (N.D. Fla. Sept. 7, 2007) (holding prisoner had no liberty interest in particular job assignment or custody classification).

Finally, although Plaintiff does not identify a specific claim of retaliation in the "Statement of Claims" section of the complaint form, to the extent his allegations imply such a claim, they are insufficient to withstand Rule 12(b)(6) scrutiny. As previously mentioned, Plaintiff complains of retaliatory transfer to another institution. Although prisoners have a right to be free from retaliatory punishment and transfer for the exercise of a constitutional right, *see* Adams v. James, 784 F.2d 1077, 1079 (11th Cir. 1986); Bridges v. Russell, 757 F.2d 1155 (11th Cir. 1985); *see also* Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003); and Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997), broad, conclusory, or speculative allegations of retaliation—such as Plaintiff presents in this case—are insufficient to state a civil rights claim. *See, e.g.,* Smith v. Florida Dept. of Corrections, 375 F. App'x 905, 911 (11th Cir. 2010); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). Plaintiff has not alleged, as he must, that the actions taken against him were in retaliation for filing lawsuits and accessing the courts or come forward with more than "general attacks" on Defendants' motivations. Crawford-El v. Britton, 523 U.S. 574, 118 S. Ct. 1584, 1598, 140 L. Ed. 2d 750 (1998) (citation omitted). Plaintiff does not specifically allege that he was retaliated against for filing grievances, in fact has alleged nothing more than his own personal belief of retaliatory motive. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (quoting Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995)). Moreover, Plaintiff's broad assertions that retaliation against him also took the form of mail tampering, destruction of sick call requests, destruction of personal property, repeated shakedowns of his cell, being prevented from communicating with his embassy, and, apparently, having to take cold showers (*see* doc. 47 at 9, 10) are too vague and

conclusory to state a claim for relief.[4] Plaintiff's retaliation claim, to the extent he asserts one in the third amended complaint, is therefore due to be dismissed.

III.   CONCLUSION

Despite having several opportunities to state a claim for relief, Plaintiff has failed to do so. The facts as pleaded in the third amended complaint are insufficient to state a claim for relief that is plausible on its face against any Defendant. Therefore, this action should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and judgment should be entered accordingly.

Accordingly it is respectfully **RECOMMENDED**:

1.   That this action be **DISMISSED** for the failure to state a claim for relief, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2.   That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida this 6<u>th</u> day of October 2014.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[4] The court notes that Plaintiff has not identified his nationality, much less identified the source of his purported right to communicate with his country's embassy. This vague allegation is insufficient to support a claim. Even if Plaintiff had provided more information, however, his claim would still fail to the extent the claimed right is rooted in Article 36 of the Vienna Convention on Consular Relations. The Eleventh Circuit has held that the Vienna Convention does not confer enforceable individual rights. Gandara v. Bennett, 528 F.3d 823, 829 (11th Cir. 2008); *see also* United States v. Emuegbunam, 268 F.3d 377, 394 (6th Cir. 2001) (stating that "the Vienna Convention does not create a right for a detained foreign national to consult with the diplomatic representatives of his nation that the federal courts can enforce.").

Case No.: 5:12cv336/MMP/EMT

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**